UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CARLA D.,[1]

              Plaintiff,

    v.                                  **Civil Action 1:25-cv-272**
                                      **Magistrate Judge Chelsey M. Vascura**

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

<u>**OPINION AND ORDER**</u>

    Plaintiff, Carla D. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a supplemental security income ("SSI"). This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 14), Plaintiff's Reply (ECF No. 15), and the administrative record (ECF No. 8). For the reasons that follow, the Commissioner's non-disability determination is **REVERSED**, and this matter is **REMANDED** to the Commissioner and the ALJ pursuant to Sentence Four of § 405(g).

**I.      BACKGROUND**

    Plaintiff filed her SSI application in February 2022, alleging that she has been disabled since January 2021. After Plaintiff's application was denied initially and upon reconsideration,

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

an Administrative Law Judge ("ALJ") held a telephonic hearing on December 6, 2023, at which Plaintiff, who was represented by counsel, appeared and testified. A vocational expert ("VE") also appeared and testified. On March 19, 2024, the ALJ issued an unfavorable determination, which became final on February 21, 2025, when the Appeals Council denied Plaintiff's request for review. (R. at 536–53, 1–7.)

Plaintiff seeks judicial review of that unfavorable determination. She contends that the ALJ's residual functional capacity ("RFC") determination lacks substantial support because the ALJ erred when evaluating the limiting effects of her obesity. (Pl.'s Statement of Errors 12–19, ECF No. 8.) Plaintiff's contention of error has merit.

## II.    THE ALJ'S DECISION

The ALJ issued the unfavorable determination on March 19, 2024. (R. at 536–93.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her February 28, 2022 application date. (*Id*. at 541.) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: osteoarthritis; disorders of the spine; obesity; and mood disorder. (*Id*.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 542.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can frequently balance (as defined by the SCO). She can occasionally stoop, kneel, crouch, and crawl. She can perform work in an environment with no strict production requirements. She can perform a job that requires only occasional decision making.

(*Id*. at 544.) At step four, the ALJ relied on the VE's testimony to determine that Plaintiff could perform her past relevant work as a hotel cleaner. (*Id*. at 547.) The ALJ alternatively found at step five that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative jobs of sorter, packer, and folder. (*Id*. at 548–49.) Accordingly, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 549.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of*

4

*Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### IV.    ANALYSIS

As previously explained, Plaintiff contends that the ALJ committed reversible error when evaluating her obesity. (Pl.'s Statement of Errors 12–19, ECF No. 9.) The Court agrees.

Social Security Ruling (SSR) 19-2p explains how an ALJ must evaluate obesity at the different steps in the sequential disability analysis. *See Soc. Sec. Ruling 19-2p; Titles II & XVI: Evaluating Cases Involving Obesity*, 2019 WL 2374244 (May 20, 2019). At step two, obesity is considered a severe impairment if it, alone or in combination with other impairments, "significantly limits [a person's] physical or mental ability to do basic work activities." *Id.* at *3. In addition, the functional effects of obesity must be analyzed on a case-by-case basis; no specific weight, body-mass index, or descriptive terms by a medical source establish obesity as a severe impairment. *Id.* at *4.

Social Security Ruling 19-2p further provides that obesity is not a listed impairment at step three. *Id.* Nevertheless, the functional limitations caused by obesity, alone or in combination with other impairments, may medically equal a listed impairment by, for example, increasing the

severity of a coexisting or related impairment. *Id*. Accordingly, an ALJ must evaluate obesity based on the information in each individual case. *Id*.

In addition, SSR 19-2p provides that at step four, an ALJ "must consider the limiting effects of obesity when assessing a person's RFC" and "explain how [he] reached [a] conclusion on whether obesity causes any limitations." *Id.* The RFC assessment must reflect "the effect obesity has upon [a] person's ability to perform routine movement and necessary physical activity within the work environment." *Id*. Notably, "[t]he combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately. For example, someone who has obesity and arthritis affecting a weight-bearing joint may have more pain and functional limitations than the person would have due to the arthritis alone." *Id*. Thus, an ALJ must "consider all work-related physical and mental limitations, whether due to a person's obesity, other impairment(s), or combination of impairments." *Id.*

Here, the ALJ considered Plaintiff's obesity at step two and determined that it constituted a severe impairment. (R. at 542.) At step three, the ALJ noted that although obesity can have an adverse impact on co-existing impairments, Plaintiff's obesity did not, alone or in combination with other impairments, meet or medially equal a listed impairment. (*Id*. at 543, 542.)

The ALJ also evaluated Plaintiff's obesity at step four when assessing her RFC, writing as follows:

> Furthermore, medical evidence does not illustrate that the demonstrable intensity, persistence, or limiting effects of the claimant's obesity would prevent the claimant from worsening (SSR 19- 2p). First, the claimant's body mass index remained in the thirties, just over the typical threshold for obesity. Given the marginal nature of the claimant's obesity, the claimant has not exhibited complications or deficits attributable to excess weight. Finally, the claimant has demonstrated an ability to control her weight. From May to July 2023, the claimant lost approximately 12 pounds (5F/14).

(*Id*. at 546.) Plaintiff contends that this discussion was inadequate. Plaintiff is correct.

6

As an initial matter, it is unclear what the ALJ meant by stating that the evidence did not show that Plaintiff's obesity would "prevent her from worsening." *Id*. Presumably, the ALJ intended to say that Plaintiff's obesity would not worsen or aggravate her other impairments. But even under that interpretation, the ALJ's determination was not supported by substantial evidence for several reasons.

First, the ALJ explained that Plaintiff demonstrated an ability to control her weight because she lost approximately twelve pounds from May to July 2023. *Id*. Plaintiff correctly contends that this mischaracterizes the record evidence. To be sure, Plaintiff's weight went from a high of 242 pounds to a low of 230 pounds during the three-month period cited by the ALJ. (R. at 1193, 879, 887.) A less myopic view of the record reveals, however, that between 2021 and

2023, Plaintiff's weight fluctuated between approximately 250 pounds and 224 pounds.[4] Thus,

the record fails to show sustained or consistent weight loss. Moreover, and more importantly,

Plaintiff contends, and Defendant does not dispute, that Plaintiff remained obese throughout the

relevant period. (Pl.'s Statement of Errors 18, ECF No. 9; Def.'s Mem. in Opp'n *passim*, ECF

---

[4] The record reflects the following weight measurements:
 Apr. 17, 2021: 224 lbs. (R. at 118.)
 May 26, 2022: 244 lbs. (*Id*. at 801.)
 June 3, 2022: 244 lbs. (*Id*. at 797.)
 Aug. 26, 2022: 250 lbs. (*Id*. at 842.)
 Oct. 19, 2022: 228 lbs. (*Id*. at 840.)
 Feb. 23, 2023: 236 lbs. (*Id*. at 1133.)
 May 17, 2023: 227 lbs. (*Id*. at 118.)
 May 23, 2023: 242 lbs. (*Id*. at 1193, 879.)
 May 30, 2023: 229 lbs. (*Id*. at 887.)
 July 14, 2023: 230 lbs. (*Id*. at 879.)
 July 24, 2023 232 lbs. (*Id*. at 875.)
 Sept. 7, 2023 230 lbs. (*Id*. at 1125.)
 Oct. 16, 2023 235 lbs. (*Id*. at 235.)

No. 14.) Therefore, the Court does not find that the ALJ's explanation, that Plaintiff "demonstrated an ability to control her weight," is substantially supported by the record.

In addition, the ALJ explained that Plaintiff's BMI remained in the thirties. He consequently characterized Plaintiff's obesity as "marginal." (*Id*.) But SSR 9-2p suggests that the functional impact of obesity should not be evaluated solely by reference to a particular weight or BMI level. Indeed, at step two, "no specific weight, body-mass index, or descriptive terms by a medical source establish" can establish obesity as severe. 2019 WL 2374244, at *4. Instead, SSR 19-2p expressly required the ALJ to "consider the limiting effects of obesity when assessing [Plaintiff's] RFC," "assess the RFC to show the effect obesity [had] upon [Plaintiff's] ability to perform routine movement and necessary physical activity within the work environment," and "explain how [he] reached [a] conclusion on whether obesity cause[d] any limitations." *Id.* That explanation did not need to be exhaustive. Yet the ALJ's explanation, that Plaintiff was "not that obese" fails to build a logical bridge between the record evidence and the ALJ's RFC determinations.

Moreover, even if the ALJ's "not that obese" explanation was sufficient, there appears to be a factual conflict about the actual degree of Plaintiff's obesity. The parties acknowledge that medical providers generally calculated Plaintiff's BMI using a height of either five feet and nine inches or five feet and ten inches. (Pl.'s Statement of Errors 18, ECF No. 9; Def.'s Mem. in Opp'n 5 n.4, ECF No. 14.) At the December 6, 2023 telephonic hearing, however, Plaintiff testified that her height was five feet and two inches. (R. at 565.) Although SSR 19-2p instructs that BMI must be based on medical evidence rather than self-reported height and weight measurements, such a significant discrepancy should likely be addressed on remand.

## V.  CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's non-disability determination and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of §405(g) for further consideration consistent with this Opinion and Order.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE